Filed 8/4/26  In re Nyaira H. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re NYAIRA H., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SARIYAH B.,<br><br>        Defendant and Appellant. | A175421<br><br>(Alameda County<br>Super. Ct. No. JD-037278-1) |

**MEMORANDUM OPINION**[1]

Defendant, Sariyah B. (mother), is the mother of Nyaira H., born in January 2023 (minor).[2]  Mother appeals from the juvenile court's order terminating her parental rights to minor under Welfare and Institutions

---

[1] Finding no substantial issues of law or fact for review, we resolve this appeal by abbreviated form of opinion as permitted by California Standards of Judicial Administration, section 8.1.

[2] Mother, born in May 2006, was also a dependent minor when these proceedings began.  Minor's presumed father, Isaiah H., has not joined this appeal.  As such, facts as to him are limited to those relevant to mother's contentions on appeal.

1

Code section 366.26.[3]  Mother asks for conditional reversal of this order on the grounds that the requisite notice and inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) were not undertaken. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2024, plaintiff, Alameda County Social Services Agency (agency), filed the operative amended petition under section 300, subdivisions (b)(1) and (g) as to both parents (amended petition).  According to this amended petition, between April 2023 and October 2023, mother repeatedly left minor at the maternal grandmother's home for days at a time without arranging for minor's care.  In addition, mother failed to consistently provide care for minor with respect to diaper changes, feeding, and emotional support.  Finally, mother failed to consistently administer minor's medication for sickle cell anemia.  As to subdivision (g), the amended petition stated that presumed father was incarcerated with no known release date and unable to arrange for minor's care.

The juvenile court found the allegations in the amended petition true on June 5, 2024, and declared minor a dependent of the court.

Regarding ICWA, the agency noted in both the original petition, filed March 1, 2024, and the amended petition that its initial inquiry yielded no information indicating minor could have Native American heritage.[4]  Mother initially told an emergency response child welfare worker (CWW) she did not have Native American ancestry.  On March 4, 2024, she then indicated there

---

[3] All statutory citations herein are to the Welfare and Institutions Code unless otherwise stated.

[4] We adopt the parties' practice of using the term "Native American" for consistency.  We recognize, however, that other terms, such as "indigenous," are preferred by many.  We intend no disrespect.

2

may be Native American ancestry in her family, but she could not provide specific information. Presumed father, in turn, told the program manager that he did not have Native American ancestry. At the subsequent detention hearing, both parents reiterated to the court that minor did not have such ancestry that they were aware of.

According to the agency, the CWW's first attempt to contact the maternal grandmother, on March 18, 2024, was unsuccessful as she did not answer the call. The same day, the CWW sent notices to the Bureau of Indian Affairs (BIA) that included parents' and minor's identifying information.

On March 19, 2024, the maternal grandmother responded to the CWW's call and stated that she was unaware of Native American ancestry in her family. The maternal grandmother further stated that her long-deceased mother, the maternal great-grandmother, told her that she believed the family had "Indian blood." However, the maternal grandmother was never able to confirm her mother's statement before she died. The maternal grandmother added that the maternal great-grandmother did not live on a reservation, did not mention a specific tribe, and only vaguely expressed her belief that the family had "Indian blood" and "creole ancestors." Further, the maternal grandmother stated that the maternal great-grandmother was the only person who mentioned believing the family had Native American ancestry. The maternal grandmother did not know of any other family members who would have information regarding the family's potential Native American ancestry, and in her opinion it was " 'highly doubt[ful]' " such ancestry existed.

At the jurisdiction/disposition hearing, mother told the juvenile court that the maternal grandmother's statements indicating the family could

3

potentially have Native American ancestry were untrue.  Nonetheless, in light of the maternal grandmother's statements regarding the deceased maternal great-grandmother's beliefs, the juvenile court continued the hearing to provide the agency more time to conduct its initial ICWA inquiry.

The agency thus sent Judicial Council Forms, form ICWA-030, to the Cahto Nation of Oklahoma;[5] Cherokee Nation; Eastern Band of Cherokee Indians; United Keetoowah Band of Cherokee Indians in Oklahoma; and BIA. These forms contained parents' and minor's identifying information, including full names and birthdates, but not that of the maternal grandmother.  Three of these tribes—the Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee Indians in Oklahoma, and Cherokee Nation—responded to the agency that minor was not eligible and/or was not recognized as one of their members.  The Cahto Nation did not respond to the notice.

At the continued jurisdiction/disposition hearing, the agency's counsel advised the juvenile court as to the notices sent to the Cherokee and Cahto tribes and their respective responses or nonresponses.  Counsel then asked the court to accept the agency's recommendations, including that ICWA did not apply to minor's case.  The juvenile court again continued the hearing to permit sufficient time to pass for the agency to receive any further responses from the tribes.

At the permanency planning hearing on January 12, 2026, the juvenile court found that the agency fulfilled its ICWA duty of inquiry and that "ICWA does not apply to this dependency matter based upon the information in the reports entered into evidence, and the amount of time that has passed

---

[5] In the record, this tribe is sometimes referred to as the "Caddo Nation of Oklahoma" or the "Caddo Tribe."

4

to receive information from the BIA or any tribes that were noticed." The court then terminated mother's and presumed father's parental rights to minor. Mother filed a timely notice of appeal.

## DISCUSSION

Mother seeks conditional reversal of the order terminating parental rights on the sole ground that the juvenile court erred in finding that ICWA did not apply to minor because: (1) the agency failed to ask two maternal aunts whether they had reason to believe minor might have Native American heritage and (2) the agency neglected to include the maternal grandmother's identifying information on the notices sent to the Cahto and Cherokee tribes.

"Under ICWA's state analogue statutes (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. (Welf. & Inst. Code, § 224.2, subd. (a).) Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (Welf. & Inst. Code, § 224.2, subd. (b).)" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, italics added (*Dezi C.*).)

If, after undertaking this initial duty of inquiry, "the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e); see also [Cal. Rules of Court,] rule 5.481(a)(4).) The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and

5

(3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2)(A)–(C).) At this stage, contact with a tribe 'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,' and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.' (*Id.*, subd. (e)(2)(C).)"[6] (*Dezi C., supra*, 16 Cal.5th at pp. 1132–1133, fn. omitted.)

The juvenile court's finding as to the adequacy of an ICWA inquiry is " 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, 16 Cal.5th at p. 1141.) Thus, so long as the record is " ' "well-developed" ' " we afford the juvenile court " ' "relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." ' " (*Ibid.*) Moreover, we uphold the juvenile court's findings that the agency conducted an adequate inquiry and that ICWA does not apply if it is "supported by sufficient evidence," even if the agency failed to interview "every" possible extended family member. (*Dezi C., supra*, 16 Cal.5th at pp. 1140–1141 [conditional reversal is not required "even if the agency did not inquire of everyone who has an interest in the child"].)

Here, the record contains sufficient evidence from which the juvenile court could reasonably conclude the agency met its duty of inquiry and that ICWA was inapplicable. Among other things, the agency inquired about

---

[6] "The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*Dezi C., supra*, 16 Cal.5th at p. 1133.)

minor's potential Native American heritage from several family members, including mother, presumed father, and the maternal grandmother.  All but one of these individuals expressed no reason to believe minor might have Native American ancestry.  The maternal grandmother, in turn, mentioned that her long-deceased mother, the maternal great-grandmother, had said she believed the family had "Indian blood" or "creole ancestors."  However, the maternal grandmother also stated that: (1) the maternal great-grandmother was the only person who mentioned believing the family had Native American ancestry; (2) the maternal great-grandmother did not live on a reservation, mention a specific tribe, or provide any information aside from her vague statements that she believed they may have "Indian blood" or "creole ancestors"; (3) the maternal grandmother was unaware of any other family member who would have information regarding the family's potential Native American ancestry; and (4) in her opinion, it was " 'highly doubt[ful]' " such ancestry existed.  On this record, a reasonable trier of fact could find that " ' "the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case" ' " and that, based on this inquiry, ICWA does not apply.  (*Dezi C., supra*, 16 Cal.5th at pp. 1140–1141.)

We reach this conclusion notwithstanding the agency's failure to interview the maternal aunts as to whether the family could have Native American ancestry, as well as its omission of the maternal grandmother's identifying information on the ICWA forms sent to the tribes and the BIA.  Our law does not require the agency to make every possible effort or chase every possible lead in determining whether a child might have Native American ancestry.  Rather, our law requires due diligence, which the agency here demonstrated.  The agency, as well as the juvenile court, could reasonably rely on the responses of mother, presumed father, and the

7

maternal grandmother as indicating Native American ancestry in this case was doubtful and that further inquiry would not be fruitful. While the agency also took the additional step of sending ICWA notices to several tribes despite having no clear "reason to believe" minor had Native American ancestry, nothing more was required by law. Accordingly, we decline to disturb the juvenile court's proper exercise of discretion. (*In re C.L.* (2025) 116 Cal.App.5th 53, 69–70 [when the record is well-developed, the department need not question every reasonably available relative]; see *In re E.W.* (2023) 91 Cal.App.5th 314, 323 [affirming ICWA finding when failure to interview additional relatives did not "cast[] any doubt on the reliability of the answers already obtained from the parents and relatives"].)

## DISPOSITION

The juvenile court's order of January 12, 2026, is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A175421/*Alameda County Social Services Agency v. Sariyah B.*

8